IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | |
| | : | CRIMINAL ACTION |
| | : | NO. 09-602-3 |
| v. | : | |
| | : | |
| REGINALD BROWN, | : | |
| Petitioner. | : | |

**Jones, II, J.**                                                     **July 31, 2015**

### MEMORANDUM

On January 12, 2015, Reginald Brown ("Petitioner") filed a *pro se* motion under 28
U.S.C. § 2255. (Dkt No. 832 [hereinafter Pet.].) Petitioner raises eleven claims, all of which
allege ineffective assistance of counsel in violation of Petitioner's Sixth Amendment rights.
Specifically, Petitioner alleges that his counsel provided ineffective assistance in: (1) failing to
challenge the alleged conspiracy by objecting to the admission of co-conspirator Kile Lowman's
testimony; (2) failing to give petitioner adequate notice of the precise charges brought against
him with regard to the aiding and abetting counts from the indictment; (3) failing to challenge the
Government's motion for complex case classification, thereby waiving Petitioner's right to a
speedy trial; (4) failing to interview helpful witnesses and co-defendants, including witness
Harold Jones and co-defendant Stefan Fenwick; (5) failing to argue that the conspiracy statute
under which Petitioner was convicted did not require "overt acts" and could be considered a
"lesser included offense" of the other crimes of which Petitioner was convicted; (6) failing to
move that all charges be dropped because of Mr. Lowman's false declaration before the grand
jury and the Court regarding when he met Petitioner; (7) failing to investigate and subpoena
material cell phone records; (8) failing to challenge that "more than one conspiracy existed,

especially when evidence on the record shows more than one conspiracy;" (9) failing at sentencing to challenge that Petitioner was being charged under the incorrect statutory minimum, to object to the base level used, or to challenge the firearms enhancement; (10) failing by conceding "that petitioner was the person who committed the conduct that constituted the crime charged" without Petitioner's consent; and (11) failing as counsel due to the cumulative errors previously listed. (Pet.; *see also* Pet'r's Reply Mot. Objecting to Gov. Mot. in Opp., Dkt No. 859 [hereinafter Rep.].)

On March 16, 2015, the Government submitted a Response to Petitioner's motion, arguing that each of Petitioner's claims is either covered by the discretion given to counsel to dictate sound trial strategy, non-prejudicial even if the alleged failure fell outside of sound trial strategy, or otherwise entirely without merit. (Resps' Resp. in Opp., Dkt No. 855 [hereinafter Resp.].) The Court finds that all of Petitioner's claims are contradicted by the record, are within trial counsel's discretion to dictate sound trial strategy, or are entirely non-prejudicial. The Petitioner's motion for an evidentiary hearing is thus DENIED and his Petition is DISMISSED. A certificate of appealability shall not issue.

## I.    BACKGROUND

On June 24, 2010, Petitioner was arrested for his alleged participation in a conspiracy to distribute crack-cocaine with members of the "Third Street Boys Crack Cocaine Organization" ("TSBCCO"). (Dkt No. 135; Dkt No. 76.) The initial indictment charged Petitioner with the distribution of cocaine base in the vicinity of a school on two separate occasions (Counts 47-50), in addition to involvement in the broad TSBCCO conspiracy to distribute fifty (50) grams or more of cocaine base (Count 1). (Superseding Indict., Dkt No. 56 1-10, 56-59.) The Court appointed Larrick Stapleton, Esq., to represent Petitioner, who pled not guilty to all charges. (Dkt

No. 94; Dkt No. 98.) Shortly thereafter, Mr. Stapleton filed a motion on behalf of his client requesting additional time to file pre-trial motions. (Dkt No. 118.) When the Government filed a motion for complex case classification four days later, Mr. Stapleton did not object, and the motion was subsequently granted. (Dkt No. 128; Dkt No. 163.) Mr. Stapleton was later granted permission to step down from his role as Petitioner's counsel, and the Court appointed a new attorney, Nicholas Pinto, Esq., to represent Petitioner. (Dkt No. 209-10.)

Mr. Pinto initially filed two motions, seeking to sever Petitioner from the other defendants and to compel the production of indices and transcripts. (Mot. to Sever, Dkt No. 240 [hereinafter MS]; Mot. to Produce Indexes and Trs., Dkt. No. 241.) With the former motion, Mr. Pinto argued that trying Petitioner alongside members of TSBCCO, with whom Petitioner claimed to have no direct involvement outside of his interactions with co-Defendant Mr. Lowman, would unfairly prejudice the jury. (MS at 7.) Specifically, Mr. Pinto argued that jury members would have difficulty keeping evidence pertaining to the allegations against Petitioner separate from the "mountain of evidence" against TSBCCO "involving guns, violence and the use of children in the drug trade…." (MS at 7.) The motion to sever was denied; the motion to produce transcripts was rendered moot. (Dkt No. 331; Dkt. No. 324.) On June 8, 2011, Mr. Pinto filed an additional motion to dismiss the conspiracy count against Petitioner, arguing that the indictment against Petitioner was overbroad and failed to confer adequate notice of the specific evidence against him. (Mot. to Dismiss Conspir. Count of Indict., Dkt Nos. 325-326 [hereinafter First MTDC].)

The motion to dismiss the conspiracy count was taken under advisement until the Government issued the Fifth Superseding Indictment ("the indictment") on September 21, 2011, dropping Petitioner from the larger conspiracy against the other seventeen named defendants, but

3

alleging a new, smaller conspiracy between Petitioner and Mr. Lowman to distribute 280 grams or more of a mixture containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count 44). (Fifth Superseding Indict., Dkt No. 385 at 58 [hereinafter Indict.].) The Fifth Superseding Indictment additionally charged Petitioner with three counts of aiding and abetting the distribution of a mixture containing cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (b)(1)(C), and 18 U.S.C. §2 (Counts 45, 47, 49), as well as three counts of aiding and abetting the distribution of said mixture within 1,000 feet of a school in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), 21 U.S.C. § 860(a), and 18 U.S.C. § 2 (Counts 46, 48, 50). (Indict. at 60-65.)

Mr. Pinto subsequently filed a second motion to dismiss the conspiracy count (Count 44), this one targeting the smaller, newly-alleged conspiracy, on October 25, 2011. (Second Mot. to Dismiss Conspir., Dkt Nos. 401-402 [hereinafter Second MTDC].) In December, Mr. Pinto also filed two motions in opposition to those submitted by the Government seeking to admit as evidence Petitioner's prior conviction for assault and weapons possession. (Opp. Mot. to Admit 404(b) Evid., Dkt. No. 466 [hereinafter Opp 404(b)]; Opp Mot in Limine to Admit 609(a) Evid., Dkt No. 46 [hereinafter Opp 609(a)].) In those motions, Mr. Pinto argued that the prejudice from such an admission would outweigh its negligible probative value, and that a limiting jury instruction would be an insufficient safeguard against the resulting unfair prejudice. (Opp. 404(b) at 3-4; Opp. 609(a) at 3-4). The Court denied the Government's motion to admit 404(b) evidence and stayed the motion to admit Rule 609(a) evidence until trial. (Dkt No. 498). Additionally, Mr. Pinto submitted a letter written by Petitioner, attaching it to the second motion to dismiss as "Exhibit 1." (Dkt No. 509.) The second motion to dismiss the conspiracy count was denied on January 25, 2012. (Dkt No. 520.)

4

Petitioner's jury trial commenced on February 9, 2012, and lasted seven days. (Dkt Nos. 558-562, 565, 568.) During the trial, Petitioner stipulated that he had aided and abetted the distribution of crack cocaine, and that he had done so within 1,000 feet of a school, but contested his guilt with regards to the conspiracy count. (Tr. of Jury Trial 2/15/2012, Dkt No. 707 [hereinafter Trial Day 4] 878:3-879:10.) At the close of the Government's case, Mr. Pinto filed a motion for acquittal on behalf of Petitioner, arguing that the evidence presented was insufficient to find Petitioner guilty of any conspiracy as a matter of law. (First Mot. for Acquittal as to Count 44, Dkt No. 564 [hereinafter First MFA].) The Court denied Petitioner's motion. (Tr. of Jury Trial 2/21/2012, Dkt No. 709 [hereinafter Trial Day 6] 1077:5-10.)

On February 22, 2012, the jury returned a verdict of guilty on all counts, but revealed through jury interrogatories that they only unanimously agreed that Petitioner had engaged in a conspiracy to distribute more than 28 grams of cocaine, rather than the "more than 280g" alleged in the indictment. (Tr. of Jury Trial 2/22/2012, 1274:1-1278:2 [hereinafter Trial Day 7].) Mr. Pinto filed a second motion for acquittal on February 28, 2012, again arguing that the evidence presented was insufficient to show conspiracy; the Court denied the motion on March 7, 2012. (Second Mot. for Acquittal, Dkt No.577 [hereinafter Second MFA]; Dkt No. 580.)

The Probation Office prepared a draft Presentence Investigation Report on April 26, 2012. (Presentence Investig. Report [hereinafter Sentencing Report] at 1.) Mr. Pinto objected to it on two grounds, arguing that (1) the initial base offense level calculation of thirty-two (32), which reflected culpability for the sale of 280 grams or more of cocaine, should have been reduced in light of the jury finding that Petitioner was only responsible for the sale of less than 280 grams of cocaine base, and (2) the firearm enhancement should have been removed absent evidence that Petitioner possessed a firearm during the course of the conspiracy. (Sentencing

Report at 29.) In response to these objections, the probation office adjusted the base offense level to thirty (30) to reflect the jury finding regarding drug quantity for which Petitioner was culpable, but maintained that the firearm enhancement was applicable, given that "[t]he adjustment should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected to the offense," pursuant to U.S.S.G. § 2D1.1. (Sentencing Report at 29) (emphasis added.) The revised report was completed on June 8, 2012. (Sentencing Report at 1.)

On June 13, 2012, the Government submitted its sentencing memo, advocating for a guideline calculation identical to that of the original draft of the sentencing report, reflecting culpability for the sale of over 280 grams of cocaine base. (Gov. Sentencing Memo, Dkt No. 668 [hereinafter GOV. SM] at 2-3.) Additionally, the Government stated that it would present additional testimony from Mr. Lowman to further substantiate the firearm enhancement. (Gov. SM 7-9.) Mr. Pinto filed a sentencing memorandum which described Petitioner's support network, objected to the Government's attempt to readjust the sentencing baseline range of thirty-two (32) upward to reflect the alleged amount of cocaine sold (280 grams) rather than what the jury found (less than 280 grams), and again contested the applied firearm enhancement. (Def.'s Sentencing Memo, Dkt No. 675 [hereinafter SM].) At the sentencing hearing on June 20, 2012, the Court sustained Petitioner's objection to the upward adjustment based on drug quantity, but denied his objection to the firearm enhancement. (Tr. of Sentencing 6/20/2012, Dkt No. 711 [hereinafter Sentencing] 7:11-20, 35:12-36:14.) Accordingly, the Court used an offense level of 34[1] and a criminal history category of III[2] to reach the recommended range of 188-235

---

[1] Offense level was computed by taking the level commensurate with the offense of selling less than 280 grams of a mixture of cocaine base (30) pursuant to U.S.S.G. § 2D1.1(c)(5), adding two (2) levels for the offense taking place within 1,000 feet of a school pursuant to U.S.S.G. § 2D1.2(a)(1), and adding two (2) levels for the firearm enhancement pursuant to U.S.S.G. §2D1.1(b)(1) for a total offense level of 34. (Sentencing 85:14-86:19.)

months. (Sentencing 86:16-19.) The statutory mandatory minimum and maximum sentences were misstated during the hearing. (Sentencing 92:15-93:10.) Yet, the imposed sentence of 235 months nonetheless fell within the guideline range and within the statutory mandatory minimum and maximum. (Sentencing 92:15-93:10.)

On June 21, 2012, Mr. Pinto filed a motion to withdraw as Petitioner's counsel, citing discussions with Petitioner that revealed a probable irreconcilable conflict of interest between Mr. Pinto and Petitioner that would arise on appeal. (Mot. to Withdraw as Counsel ¶ 6, Dkt No. 677.) The Court granted Mr. Pinto's motion, appointing Billy J. Smith, Esq., as counsel for Petitioner on appeal. (Dkt No. 683.)

A notice of appeal was timely filed on behalf of Petitioner on June 20, 2012. (Dkt No. 683.) On November 12, 2012, the Third Circuit affirmed the judgment of the Court. (Dkt No. 761.) On January 12, 2015, Petitioner brought the current pro-se motion to vacate, set aside, or correct sentence. (Pet.) The Government filed a response in opposition. (Resp.) Petitioner further elaborated on his arguments in his reply. (Rep.)

## II.   STANDARD OF REVIEW

A § 2255 Motion to Vacate, Set Aside, and/or Correct Sentence may be granted on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255.

A district court must grant an evidentiary hearing when the records in the case are "inconclusive on the issue of whether movant is entitled to relief." *U.S. v. McCoy*, 410 F.3d 124,

---

[2] The criminal history category of III reflected a conviction for one previous violent offense combined with the commission of the current offense while on probation, in accordance with U.S.S.G. §4A1.1(c). (Sentencing 85:14-86:19.)

131 (3d Cir. 2005) (citing *Solis v. U.S.*, 252 F.3d 289, 294-95 (3d Cir. 2001)). A § 2255 motion "can be dismissed without a hearing [only] if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (quoting *Engelen v. U.S.*, 68 F.3d 238, 240 (8th Cir. 1995)).

"The standard governing…requests [for evidentiary hearings] establishes a reasonably low threshold for habeas petitioners to meet." *Id.* (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989). A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Sixth Amendment right to counsel "is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To prove that counsel was ineffective, Petitioner must establish that (1) counsel's performance was constitutionally deficient, and (2) that deficiency prejudiced Petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance "requires showing that counsel made errors so serious that he or she was not functioning as the 'counsel guaranteed to the defendant by the Sixth Amendment.'" *Id.* In essence, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 690 (quoting *Michel v. Louisiana*, 250 U.S. 91, 101 (1955)). Prejudice requires showing that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* at 687.

### III.   ANALYSIS

As a preliminary matter, Counts VI[3] and XI[4] of Petitioner's ineffective counsel claim are summarily dismissed, as they are redundant and without merit.

### A.   Counsel's failure to object to the admission of witness Kile Lowman's testimony was not ineffective assistance of counsel; Count I is dismissed.

Petitioner argues that counsel was ineffective due to counsel's failure to "invoke the Court's gate-keeping duties under Fed. R. Evid. 104(a)" and challenge the admission of Kile Lowman's testimony. This argument fails because counsel's refusal to object constitutes sound trial strategy.[5]

Petitioner points to Mr. Lowman's "statement at the Grand Jury…that he met petitioner and started buying drugs from petitioner at the beginning of 2007." (Rep. at 2-3.) Petitioner argues that "[h]ad counsel investigated he would have found that petitioner…was incarcerated at SCI Chester in 2005, until his sentence was complete[] [i]n Jan. of 2008…" (Rep. at 2-3.) Indeed, Mr. Lowman's testimony at trial that he met Petitioner "around 2005 or '06" is contradicted by the sentencing report, which reveals that Petitioner was released from his previous incarceration on January 9, 2008. (Trial Day 3 621:20-22; Sentencing Report at 124.) Accordingly, Petitioner claims that counsel should have "challenge[d] the existence of the alleged conspiracy, because it was based on perjured testimony of the Grand Jury." (Rep. at 3.)

First, Petitioner fails to state how counsel could have "invoke[d] the Court's gate-keeping duties" in any meaningful way. As the Government points out in its Response, the prosecution

---

[3] Count VI, claiming ineffective assistance of counsel for failing to object to witness Mr. Lowman's allegedly false testimony, is redundant with the claims alleged in Count I. *See infra* pp. 9-11.

[4] Petitioner alleges ineffective assistance of counsel due to the "cumulative errors" in violation of Petitioner's Sixth Amendment rights. (Pet. 15.) These errors are discussed under the other grounds. Ground XI is therefore dismissed due to redundancy.

[5] Petitioner additionally argues that his counsel generally failed to challenge the conspiracy between Mr. Lowman and him alleged in Count 44. (Rep. at 2.) This argument is directly contradicted by the record and is thus without merit. (*See, e.g.,* Second MTDC; First MFA; Second MFA.)

was entitled to call Mr. Lowman as a witness at trial. (Resp. at 15); *see also* Fed. R. Evid. 601

(stating that "[e]very person is competent to be a witness unless these rules provide otherwise").

There is no feasible ground upon which Petitioner's counsel could have expected to successfully

bar Mr. Lowman from testifying.

While Petitioner accurately points out an inconsistency between facts on the record and

Mr. Lowman's testimony, the record does not support Petitioner's assertion that his counsel did

not conduct pre-trial investigation and was unaware of this inconsistency. On the contrary,

counsel for Petitioner acknowledges Petitioner's prior criminal record, Petitioner's incarceration,

and Petitioner's release date in two motions opposing the Government's attempts to admit

evidence about his prior incarceration. (Opp. 404(b) at 2; Opp. 609(a) at 2.) Further, Petitioner's

motions reference and affirm the fact sections from the Government's memos which explicitly

state Petitioner's term of incarceration. (*See* Dkt No. 437 at 6, Dkt No. 411 at 6.)

Moreover, Count 44 alleges a conspiracy that began "in or about January 2009." The time

period alleged in the conspiracy began long after Petitioner's release from his previous term of

imprisonment. (Indict. 58.) Thus, when Petitioner met Mr. Lowman was not a material fact for

any of the crimes with which he was charged. If anything, pointing out this inconsistency in Mr.

Lowman's testimony would serve to undermine Mr. Lowman's credibility. However, to point

out this inconsistency for the purpose of undermining Mr. Lowman's credibility, counsel would

have had to reveal that Petitioner was incarcerated.

Counsel had successfully argued that evidence of Petitioner's prior incarceration would

inevitably cause unfair prejudice against Petitioner. (*See* Opp. 404(b) at 3-4; Dkt No. 498.) To

rebut the inconsistencies in Mr. Lowman's testimony, counsel would have had to reveal to the

jury that Petitioner was incarcerated. Thus, counsel would be revealing to the jury exactly what

he sought to prevent the jury from hearing. Counsel's refusal to bring up this discrepancy at trial reflects a sound strategic approach that aimed to omit Petitioner's criminal history from the jury trial.

Further, Petitioner's counsel was able to call Mr. Lowman's credibility into question on numerous other occasions without causing any prejudice to Petitioner. (*See, e.g.*, Trial Day 3 at 752:24-754:1; 760:760:6-20; 761:19-763:19; 773:18-776:8; 777:4-778:20; 779:23-780:11; 785:12-787:8; 815:2-816:25.)

Finally, Petitioner's claim that the conspiracy charge was "based on" Mr. Lowman's "perjured testimony" overlooks the substantial amount of evidence, including phone records and audio recordings, upon which the indictment was brought. (Indict. 58-59.) Thus, for all of the above reasons, counsel's refusal to object to the admission of Mr. Lowman's testimony, and to contest the conspiracy count on similar grounds, constitute sound trial strategy, and cannot be considered ineffective assistance of counsel.

### B. Petitioner's claims concerning the alleged defects in the indictment are directly contradicted by the record; Count II is dismissed.

Petitioner claims that the indictment was defective, and that his counsel was ineffective for failing to challenge it. Petitioner asserts that the indictment "failed to allege the words knowing and intentionally," and "fail[ed] to mention the word[s] aiding and abetting," it provided inadequate notice to Petitioner that he was being charged with aiding and abetting pursuant to 18 U.S.C. § 2. (Rep. at 5.)

These claims are directly contradicted by the record. The Fifth Superseding Indictment uses the following language in each of Counts 45-48: "Reginald Brown, together with Kile Lowman, charged elsewhere, *knowingly and intentionally* distributed, and *aided and abetted* the distribution of…a mixture and substance containing a detectable amount of cocaine base…"

(Indict. 60:2, 61:2, 62:2, 63:2) (emphasis added.) Petitioner additionally concedes that "18 U.S.C. § 2" is explicitly listed in the indictment. (Rep. at 5.)

Petitioner also implies that he received inadequate notice of which of his acts constituted aiding and abetting. (Rep. at 5.) This implication is similarly contradicted by the record. Counts 45-50 each incorporate specific paragraphs from the "Manner and Means" and "Overt Acts" sections of Count 44, apprising Petitioner of the specific acts comprising each count of aiding and abetting, in addition to all other counts. (Indict. 60:1, 61:1, 62:1, 63:1, 64:1, 65:1.)

### C.   Counsel's failure to challenge Government's motion for complex case classification was non-prejudicial to Petitioner; Count III is dismissed.

Petitioner argues that his counsel, Mr. Stapleton, was ineffective because he failed to object to the Government's motion for complex case classification, thereby violating Petitioner's speedy trial right. This claim is without merit. Petitioner has made no showing that the alleged error was prejudicial.

In *Wells v. Petsock*, the Third Circuit ruled on the question of whether an attorney's failure to object to the prosecution's motion for continuance, effectively waiving his client's speedy trial right, could ground a claim of ineffective assistance of counsel.[6] 941 F.2d 253, 259 (3d Cir. 1991). The Third Circuit held that, even assuming that trial counsel acquiesced to the motion without the petitioner's consent, "[a]bsent some allegation of prejudice to the defense-for example, the destruction of exculpatory physical evidence or the loss of a key defense witness during the period of delay-such a claim is facially untenable." *Id.* Citing the petitioner's failure to allege any such specific prejudice, the Circuit dismissed his claim. *Id.*

---

[6] Though the petition in *Wells* was a state habeas claim brought under 28 U.S.C. § 2254, the analysis of the particular issue referenced herein is nonetheless fully applicable to the current circumstances.

Like the petitioning defendant in *Wells*, here, Petitioner fails to allege any specific prejudice that resulted from his counsel's acquiescence in the Government's motion for complex case classification. Even assuming, as the court did in *Wells*, the credibility of Petitioner's claim that his counsel's failure to object was against his wishes, Petitioner does not suggest that any prejudice to Petitioner resulted due to his prolonged pre-trial detainment. Due to a failure to show prejudice, Petitioner's argument that his counsel was ineffective because he assented to the Government's motion for complex case classification is without merit.

### D.    Counsel's failure to interview and call to testify witness Harold Jones and co-defendant Stefan Fenwick was non-prejudicial; Count IV is dismissed.

Petitioner's ineffective assistance arguments regarding his counsel's alleged failure to interview and call potentially exculpatory witnesses to testify fail because the alleged errors were non-prejudicial. Trial counsel receives a great deal of latitude in determining which witnesses to interview and call for testimony. *See Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987) (holding, in the § 2254 context, that trial counsel's decision not to call a witness which was based on an erroneous assumption nevertheless fell under the umbrella of sound trial strategy); *Levan v. U.S.*, 128 F.Supp.2d 270, 280 (E.D. Pa. 2001) (citing *Diggs* for the proposition that "determining which witnesses to call at trial is intrinsically strategic and therefore left to the discretion of counsel"). Decisions regarding which witnesses to call are "precisely the type of strategic decision[s] which the Court in *Strickland* held to be protected from second-guessing." *United States v. Merlino*, 2 F. Supp. 2d 647, 662 (E.D. Pa. 1997). Given that the current matter is still in the pre-evidentiary hearing stage, however, the Court will accept Petitioner's allegations as true and proceed on the assumption that the omission of Petitioner's witnesses reflected a lack of pre-

trial investigation rather than any strategic consideration.[7] *See, generally*, *McCoy*, 410 F.3d at 131.

“To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” *Strickland*, 466 U.S. at 694. In assessing whether errors prejudiced the decision-maker, the standard of proof must be taken into account. “When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.” *Id.* at 695.

First, Petitioner argues that trial counsel's failure to call Mr. Jones constitutes ineffective assistance of counsel. Specifically, Petitioner argues that, had trial counsel called Mr. Jones to the stand, counsel could have impeached Mr. Lowman regarding when Mr. Lowman and Petitioner were first introduced. (Rep. at 10.) Petitioner also claims that, contrary to Mr. Lowman's testimony stating that he began buying crack from Petitioner in 2007, “Harold would have testify [*sic*] that[] he started dealing with petitioner in the summer of 2008 and that he was only selling [m]arijuana…with Gov. witness (Kile Lowman), not crack.” (Rep. at 10.) Assuming the truth of this claim, at least part of which has some support from the record, (*see* Trial Day 3 621:20-22; Sentencing Report at 124), Petitioner still fails to show how this could plausibly change the result of the trial.

---

[7] The record suggests that strategic considerations may well have motivated Mr. Pinto's refusal to call Mr. Jones. For example, in closing, Mr. Pinto references both Mr. Jones and Petitioner's other co-defendants, posing the rhetorical question to the jury, “…[W]here is Harold Jones? Where is he? The Government talks about him. Where is he? Where are the 16 partners in crime…[?]” (Trial Day 6 1154:10-1155:4.)  However, such statements do not necessarily allow the Court to draw conclusions regarding the quality and level of pre-trial investigation. Thus, for the purposes of this Petition, the Court will continue to the prejudice prong of *Strickland*.

As previously stated, the indictment alleged a conspiracy that began "in or about January 2009," stating nothing about the dates that Petitioner attempts to challenge here. The fact of when Petitioner started dealing either marijuana or cocaine base was not a material fact that the jury needed in order to convict Petitioner of the crimes with which he was charged. Moreover, a full reading of Mr. Lowman's testimony on this point during direct examination shows that the date challenged by Mr. Jones's proposed testimony is, at best, of secondary importance to the Government's case:

> [GOVERNMENT]: And when did Harold introduce you to Reginald Brown, approximately?
>
> [MR. LOWMAN]: Around 2005 or '06.
>
> [GOVERNMENT]: And –
>
> [MR. LOWMAN]: It might have been '06.
>
> [GOVERNMENT]: After he introduced you –
>
> [MR. LOWMAN]: Uh-huh
>
> [GOVERNMENT]: --when you [*sic*] did you start buying crack from him?
>
> [MR. LOWMAN]: Probably later on after that. A while.
>
> [GOVERNMENT]: Do you remember approximately when it was that you started buying crack?
>
> [MR. LOWMAN]: Probably a couple – couple months afterwards.
>
> [GOVERNMENT]: Okay. After what?
>
> [MR. LOWMAN]: I believe it might have been 2007.
>
> [GOVERNMENT]: So you think you started buying crack from him in 2007?
>
> [MR. LOWMAN]: Uh-huh.
>
> [GOVERNMENT]: And then was there a time period when you were buying it consistently from him?

[MR. LOWMAN]: Yes.

[GOVERNMENT]: And when was that?

[MR. LOWMAN]: 2009.

(Trial Day 3 621:20-622:16) (corrections in original.) Thus, at best, Mr. Jones's testimony could have been used to impeach Mr. Lowman on an inconsequential issue, perhaps calling into question Mr. Lowman's credibility. However, here, trial counsel already successfully challenged Mr. Lowman's credibility on numerous occasions. (*See, e.g.*, Trial Day 3 752:24-754:1; 760:760:6-20; 761:19-763:19; 773:18-776:8; 777:4-778:20; 779:23-780:11; 785:12-787:8; 815:2-816:25.)

Moreover, Mr. Lowman equivocates on the dates of events throughout his testimony; Petitioner's trial counsel attacks him specifically regarding his recollection of dates on more than one occasion. (*See, e.g.,* Trial Day 3 756:1-18; 770:14-772:13; 774:2-776:3; 779:23-780:11). The jury's negative answer to the second interrogatory, which inquired as to whether Petitioner could be held accountable for selling over 280 grams of crack-cocaine under the conspiracy charge, provides further evidence of trial counsel's successful characterization of Mr. Lowman as untrustworthy and self-serving. A finding of over 280 grams would have been at least partially contingent on the jury believing Mr. Lowman's testimony regarding sales outside of those recorded by the government. (Sentencing 34:16-35:4.)

Therefore, the Court finds, on consideration of the totality of the evidence presented in accordance with *Strickland*, that the proposed testimony of Mr. Jones did not affect material facts needed to convict Petitioner, but rather, could potentially have provided additional evidence challenging Mr. Lowman's credibility. Given that counsel repeatedly attempted to undermine

16

Mr. Lowman's credibility, and clearly, had success in doing so, counsel's alleged failure to interview Mr. Jones and call him as a witness was non-prejudicial.

Next, Petitioner argues that counsel's failure to call co-defendant Stefan Fenwick to testify at the sentencing stage in order to challenge the firearm enhancement was ineffective assistance of counsel. Petitioner alleges that Mr. Fenwick would have contradicted Mr. Lowman's claim during his testimony at sentencing that Mr. Lowman brokered a deal between Petitioner and Mr. Fenwick where the former bought a firearm from the latter for $300. (*See* Sentencing 15:16-16:14.) Again, assuming the accuracy of Petitioner's contention that Mr. Fenwick would contradict this, there are nonetheless multiple reasons this is not prejudicial.

First, Mr. Lowman testified that multiple guns were present at Petitioner's residence. (Sentencing 16:15-24; 17:12-16.) Thus, even if Mr. Fenwick's testimony had cast doubt on Mr. Lowman's account of the sale of one firearm, Petitioner would still need to contend with Mr. Lowman's remark pertaining to the other guns.

Furthermore, even if Mr. Lowman's testimony at sentencing were thrown out in its entirety, the Third Circuit case law on the subject of firearms in drug cases is clear, and falls neatly in favor of the government in this case. Guns are considered "tools of the drug trade." *See, e.g.*, *United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998); *United States v. Adams*, 759 F.2d 1099, 1109 (3d Cir. 1985) (internal citations omitted). Under the sentencing guidelines, conspirators are accountable for all reasonably foreseeable acts committed by any co-conspirator in furtherance of the conspiracy. U.S.S.G. § 1B1.3(a)(1)(B).

In the current case, undisputed testimony at trial showed that Petitioner's co-conspirator, Mr. Lowman, was known by the alias "Guns." (Trial Day 3 612:23-24.) Moreover, Mr. Lowman

admitted, again in testimony at trial, that he owned several firearms and that he used them to

protect the drugs he purchased:

> [GOVERNMENT]: Tell us about the guns you had.
>
> [MR. LOWMAN]: I had 9s, 45s, 40s. I had a lot of them. Do I have to name all of them?
>
> [GOVERNMENT: Well, as best as you can remember.
>
> [MR. LOWMAN]: I had 45s, ACPs. I had Rugers, Smith & Wessons, two Sig Saurs, and one Sig Pro.
> …
> [GOVERNMENT]: And did you sometimes sell your guns?
>
> [MR. LOWMAN]: Yes.
>
> [GOVERNMENT]: And why would you do that?
> …
> [MR. LOWMAN]: I might have didn't want it no more or just to get some more money.
>
> [GOVERNMENT]: And why would you need more money?
>
> [MR. LOWMAN]: So I can buy more drugs.
>
> [GOVERNMENT]: And why would you need guns?
>
> [MR. LOWMAN]: To protect them.

(Trial Day 3 629:12-17; 630:14-15, 630:19-34.) Thus, even absent Mr. Lowman's sentencing

testimony claiming that Petitioner owned firearms, the Government demonstrated that co-

conspirator Mr. Lowman certainly owned firearms. And even if Petitioner was unaware of Mr.

Lowman's alias, a claim that is also contradicted by Mr. Lowman's sentencing testimony,

(Sentencing 14:17-15:15), the Court considers firearms a "tool of the trade," the use of which

during a drug conspiracy is foreseeable.

These are the primary grounds upon which the Court upheld the proposed firearm

enhancement, not Mr. Lowman's testimony at sentencing:

[THE COURT]: The Government has correctly highlighted the extensive case law which stands for the legal propositions, one, firearms are the, quote, tools of the trade, end quote, in drug operations; arguably, it is irrelevant that an individual defendant did not possess firearms himself, as the law imputes upon every defendant all foreseeable acts that occurred in furtherance of the conspiracy; and three, defendants are responsible for co-conspirators' violent actions if they were reasonably foreseeable within the scope of the conspiracy.

This court, upon reflection and having heard the arguments – respective arguments of counsel, cannot agree with Mr. Brown's argument. Mr. Brown was an active member of a conspiracy with Kile Lowman. Mr. Lowman was a dealer known for drug activities involving weapons. The Court notes Mr. Lowman's testimony relevant to 2009 to 2000 – the relevant months of 2009 and the evidence to which he testified today.

The Court agrees with the Government that the circumstances of the conspiracy would strain credulity to imagine that Mr. Brown was not a participant or possessor of a weapon, and, therefore, the objections to enhancements under United States Sentencing Guideline Section 2D1, (b) (1) and (b) (2) are hereby overruled.

(Sentencing 35:12-36:14.)

Petitioner fails to establish a reasonable probability that the alleged failure of his counsel to call Mr. Fenwick to testify during sentencing would have affected the application of the firearm enhancement. Petitioner's ineffective counsel claims with regards to interviewing and calling witnesses are without merit.

###    E.    Counsel's failure to object to the conspiracy count of the indictment on various grounds was sound trial strategy; Count V is dismissed.

Petitioner's arguments based on counsel's alleged failure to object to the conspiracy charge (Count 44) on various grounds are without merit, as counsel's refusal to do so was sound trial strategy. First, Petitioner argues that his counsel was ineffective for failing to object to overt acts being included in the conspiracy count of the indictment. (Rep. at 9.) Petitioner's argument boils down to an assertion that, because 21 U.S.C. § 846 does not require that any overt act be alleged, the overt acts included in the indictment constitute prejudicial surplusage that Petitioner's counsel should have moved to strike under Fed. R. Crim. Proc. 7(d). (Rep. at 9.) A

district court may only strike surplusage from the indictment "when it is both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006).

Here, the acts carried out in furtherance of the alleged conspiracy were highly relevant, both to the alleged conspiracy and to the other aiding and abetting and distribution counts which were predicated upon them. The Court also guarded against any remaining possibility of prejudice arising from the indictment by instructing the jury that the indictment was not to be considered evidence, and that the jury was responsible for finding guilt or innocence based solely upon evidence presented at trial. (Trial Day 6 1183:18-1184:11.) *See United States v. Marshall*, 985 F.2d 901, 906 (7th Cir. 1993) (finding that the jury was not prejudiced by the indictment because "the district court instructed the jury that the indictment was not evidence and that guilt or innocence had to be determined only upon the evidence presented in the case").

Petitioner also asserts that his counsel should have argued against 21 U.S.C. § 846's lack of overt act requirement, as "mere guilty intention is never criminal." (Rep. at 9). Petitioner's argument mischaracterizes the nature of conspiracy. "The prohibition against criminal conspiracy… does not punish mere thought; the criminal agreement itself is the *actus reus*…" *United States v. Shabani*, 513 U.S. 10, 16 (1994).

Finally, Petitioner states that his counsel should have argued that "because [21 U.S.C. § 846] required no overt acts, petitioner could be charged under the lesser included offense of 18 U.S.C. 371." (Rep. at 9.) Petitioner was found guilty not just of basic conspiracy, but of a drug conspiracy under 21 U.S.C. § 846. Petitioner was not charged under 18 U.S.C. § 371, so the lesser included offense language in that section is inapplicable to the case.[8]

---

[8] Even if 18 U.S.C. § 371 could be applied to Petitioner's conviction for drug conspiracy – which it cannot – it would still be inapplicable. A lesser offense is defined in Fed. R. Crim. Proc. 31(c)(1) as "an offense necessarily included in the offense charged." A jury instruction allowing a lesser included offense finding is only proper where the jury could reasonably find the defendant guilty of the lesser offense and

A counsel's failure to make futile motions cannot be ineffective assistance of counsel. *See Werts v. Vaughn*, 228 F.3d 178, 206 (3d Cir. 2000) (stating that counsel's failure to object to a statement that was not improper does not constitute ineffective assistance of counsel because abstaining from doing so could be considered sound trial strategy). Petitioner has also failed to show that the making of such motions would have affected the outcome of the case in his favor.

**F.      Counsel's failure to investigate and subpoena material documents, including cell phone records, was sound trial strategy; Count VII is dismissed.**

Petitioner's ineffective assistance argument alleging counsel's failure to subpoena cell phone records is without merit because counsel's refusal to do so reflects sound trial strategy. In *Strickland*, the Supreme Court directly discussed the duty of counsel with regard to pre-trial investigation: "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691.

Petitioner argues that counsel erred by "failing to subpoena relevant cell phone records of Sept. 9, 2009, up until Oct. 14, 2009."[9] (Rep. at 11.) These dates were of particular importance to

---

not guilty of the greater. *United States v. Minker*, 312 F.2d 632, 636 (3d Cir. 1962). Where the two offenses have identical elements, as Petitioner argues here, the defendant is not entitled to any such jury instruction. *Id.*; *Berra v. United States*, 351 U.S. 131, 134 (1956) (abrogated on other grounds).

[9] Petitioner also seems to argue that counsel erred in failing to further investigate the cell phone records turned over by the Government for Petitioner's phone to determine the ownership of the phone. (Rep. at 11.) Such investigation would have allegedly revealed that the phone belonged to somebody else named "Shaw [*sic*] Brown" who lives in Jenkintown, PA. (Rep. at 11.) First, the fact that the phone was registered to one "Shawn Brown" did come out at trial through the testimony of the Metro PCS Records Custodian. (Trial Day 3 526:14-21.)

Moreover, through the trial, multiple witnesses testified as to Petitioner's use of the phone. Both Mr. Lowman and DEA informant Ian Kernighan testified that they were able to reach Petitioner using the number in question. (Trial Day 3 629:4-8; Trial Day 5 1010:7-20.) Moreover, the Government introduced an audio recording at trial of Mr. Kernighan calling the number in question and reaching Petitioner's voicemail. (Trial Day 5 950:12-951:18; 1010:7-20.) Finally, and most conclusively, the Government published as exhibits cell phone records showing multiple communications between the numbers of Mr. Lowman and Petitioner as well as Mr. Kernighan and Petitioner shortly before their respective meetings

the case "since the Gov. stated that Oct. 13, 2009 was the first time that the confidential source

contacted petitioner." (Rep. at 11.) Trial counsel was aware of both the existence of the cell

phone records and their importance. He articulated his trial strategy with regard to the records for

the time period in question at the outset of trial while disputing whether the Government had

turned over all of the cell phone records they had on hand:

> [MR. PINTO]: And if your Honor remembers the time of hearing Mr. – Mr. Brown's
> second motion to dismiss, it was just us, because I wasn't available for the others, I told
> Your Honor that I was getting limited phone logs. I got two months of phone logs for Mr.
> Lowman for a 267 number, and the U.S. Attorney's Office told me, "Well, we can't get
> any more," even though it's alleged that Mr. Lowman had been in contact with my client
> from January of 2009 all the way up until September of 2009.

> Where are the other – where are the records in between to corroborate that? "Well, we
> don't have them. We can't get them. The carrier doesn't hold them anymore." But then
> the Government said, "Well, you could have got them."

> Well, since I was only give [sic] the phone logs a month ago or so, how was I going to
> get the phone logs if they're unavailable after six months, six months from the date that
> they were processed? I didn't have an opportunity. The Government had an opportunity
> to get those, but I didn't.

> There's also another phone log, phone logs for my client's phone, for the three sales,
> August 27th, September 1st, and October 15th. However, there were significant phone
> conversations which took place between the confidential source and my client on October
> 13th. Those – those phone records weren't produced.

> [THE COURT]: Were or were not?

> [MR. PINTO]:  Were not produced.

> Now, Ms. Marston – Ms. Marston, she didn't – she wasn't assigned to the case when that
> happened, I – assume, but where are those records [indiscernible]?

> [THE COURT]: Mr. Pinto, let me just get something –

> [MR. PINTO]: Yes.

> [THE COURT]: -- straight here factually. What prohibited you or precluded you from
> obtaining your own client's phone records?

on the specific dates alleged in the indictment on which Petitioner was recorded selling crack-cocaine to
informants. (Trial Day 3 529:6-533:5.) Thus, this claim is without merit.

[MR. PINTO]: Your Honor, as – as I – as the Government said right here – or said to me, after six months, the phone company, the carrier, doesn't have the records anymore. That's number one.

Number two, Your Honor, if I subpoena the records without knowing what the Government has, don't I have the obligation to turn those records over to the Government and possibly give the Government inculpatory evidence against my client? In other words, Your Honor –

[THE COURT]: I understand. I understand.

[MR. PINTO]: -- if I have – if I have an – if I need something to counteract, fine. But I cannot be proactive in finding possible incriminating evidence against my client with the obligation to turn it over to the Government.

[THE COURT]: I understand. All right.

(Trial Day 1 18:7-20:14.) The Government attorney further elaborates on Mr. Pinto's strategy

while assuring the Court that all records the Government has subpoenaed have been turned over:

[GOVERNMENT]: …[T]he phone records that we do have are for specific time frames, and those phone records I plan to introduce during the course of the Government's case in chief. He's had those phone records. He can use those phone records. He can use the fact that the phone records aren't complete, if he wants, on cross-examination.

As to the specific date, October 13th, we did not subpoena October 13th, so we don't have – the Government won't be able to corroborate the confidential informant who made calls to Mr. Brown's number other than the tapes. So we won't have the phone records to say, "Okay, here's the telephone call. We see it on the toll records." We don't have October 13th. But again, he can use that for cross-examination purposes.

The Government had no obligation to subpoena any phone records. If we chose not to subpoena any phone records, we wouldn't have to. Just because we have phone numbers doesn't mean we have to subpoena records. We subpoenaed certain records. We've turned those over in discovery….

(Trial Day 1 25:6-26:2.)

True to his stated strategy, throughout the trial, Mr. Pinto drew the jury's attention to

what he portrayed as the conspicuous absence of Government evidence from phone records for

October 13. (*See, e.g.,* Trial Day 3 539:4-16; Trial Day 5 998:6-19, 1002:18-1004:19; Trial Day

6 1156:12-1157:4, 1158:2-16.) Given the reasonableness of this decision in light of the
circumstances, Petitioner's argument with regard to the phone records from September 9, 2009,
to October 14, 2009, is without merit, as counsel articulated and pursued a sound trial strategy.

### G. **Petitioner's claim regarding a variance of proof is contradicted by the record; Count VIII is dismissed.**

Petitioner advances two arguments related to the presence of multiple conspiracies. First,
he asserts that "because of the multiple conspiracies a[n] impermissible variance of proof
between the indictment of Count One and the proof of Count Forty-Four of the fifth superseding
indictment" arose. (Rep. at 12.) A variance of evidence applies where a single conspiracy is
alleged in the indictment, but evidence presented at trial only demonstrates the existence of
multiple conspiracies. *United States v. Smith*, 789 F.2d 196, 200 (3d Cir. 1986). The court will
vacate a defendant's sentence where there is (1) a variance that (2) prejudices a substantial right
of the defendant. *United States v. Schurr*, 775 F.2d 549, 553 (3d Cir. 1985). The purpose of this
rule is to prevent defendants from "[being] tried en masse for the conglomeration of distinct and
separate offenses committed by others." *Kotteakos v. United States*, 328 U.S. 750, 775 (1946).

Here, the rule of variance is inapplicable. The indictment alleges multiple conspiracies
from the outset, only the smaller of which (Count 44) includes Petitioner. (Indict. at 58-59.)
Indeed, Petitioner is not named, nor are any of his acts mentioned, in Count I of the indictment.
(Indict. at 2.) Petitioner was not tried alongside members of the larger TSBCCO conspiracy.

Petitioner additionally argues that "the jury might have been unable to separate petitioner
from Count One of the overall conspiracy…from the separate smaller conspiracy in which
petitioner was convicted in Count Forty-Four…" (Rep. at 13.) Again, Petitioner was tried alone
and the only conspiracy with which he was charged was the smaller conspiracy.

Furthermore, counsel made continual efforts to dissociate Petitioner from the TSBCCO conspiracy throughout the trial, attempting to prevent the jury from confounding Petitioner's culpable conduct with that of others in the indictment. (*See, e.g.*, Trial Day 3 458:21-460:3; Trial Day 6, 1159:13-19, 1160:11-16.) Most importantly, Petitioner's claim that his counsel failed to raise this issue with the Court is blatantly contradicted by his second motion for acquittal, which alleged that trying Petitioner under the TSBCCO nameplate was prejudicial to the jury. (Second MFA 8.) Thus, any claim of ineffective counsel on this front is without merit.

**H.      Counsel's objection to the base level guideline falls within his discretion to dictate sound trial strategy, and counsel's failure to challenge that Petitioner was being charged under incorrect statutory minimum and maximum was non-prejudicial to Petitioner; Count IX is dismissed.**

Petitioner's arguments alleging ineffective assistance of counsel at the sentencing stage are without merit because they either fall under the umbrella of counsel's reasonable professional judgment or represent non-prejudicial error. Petitioner argues (1) that counsel failed to object to his sentencing guidelines, which were allegedly computed inaccurately, and (2) that the Court and all parties misstated his statutory minimum and maximum sentence during the sentencing hearing.[10]

---

[10] Petitioner additionally alleges, under Count Nine in his initial Petition, and under Count Eleven of his Reply, that the firearm enhancement was improper, and that both trial and appellate counsel erred in failing to argue against it. (Pet. at 13; Rep. at 17-18.) With respect to trial counsel, this is contradicted by the record, which conclusively shows that Mr. Pinto did in fact oppose the firearms enhancement both before and at sentencing, on essentially the same grounds discussed in Petitioner's Reply. (SM at 6; Sentencing 28:5-30:18.)

In regard to appellate counsel, Petitioner's lawyer had discretion to choose which arguments were the most likely to prevail. *See Jones v. Barnes*, 463 U.S. 745, 753 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy...."). Rather than attacking the firearm enhancement, which was supported by both the facts and established case law in the Third Circuit, see *supra* pp. 16-19, appellate counsel chose to direct his efforts toward challenging the sufficiency of the evidence to warrant a jury finding of conspiracy. Petitioner does not make a colorable claim that failure to raise this issue was prejudicial, given the weight of the evidence and the more relaxed burden of proof at sentencing. Therefore, Petitioner's firearm enhancement arguments alleging ineffective assistance are without merit.

First, Petitioner argues that using the 2011 sentencing guidelines,[11] his base level should have been computed using the drug quantity range of 28-112 grams of Cocaine Base. (Rep. at 14.) This would put his base level range at Level 26. In contrast, Petitioner was sentenced at the 196-280 grams range. (Sentencing 7:6-20.) The 196-280 grams range placed him at Level 32. According to the jury's responses to the interrogatories, the jury found that Petitioner could be held accountable, beyond a reasonable doubt, for selling over 28 grams of cocaine base, but could not be held accountable for above 280 grams. Petitioner argues that the jury's answers to these interrogatories should have been used to keep his sentencing guideline range to 28-112, rather than 196-280. (Rep. at 14.)

These interrogatories were directed to ensure compliance with *Apprendi v. New Jersey,* which established that facts used to fix a statutory minimum and maximum penalty must be found beyond a reasonable doubt. 530 U.S. 466, 490 (2000). Because the statutory penalty for selling between 28 grams and 280 grams of cocaine base differs from the statutory penalty for selling over 280 grams, the jury interrogatories regarding the amount sold were required to protect Petitioner's right to trial by jury. The interrogatories do not conclusively determine drug amounts for purposes of the sentencing guideline base level computation.

To determine an amount for the sentencing guideline base level computation, the Court may consider facts established by a preponderance of evidence, provided the court sentences within the parameters established by the statutory minimum and maximum. *See, e.g., United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999) (abrogated on other grounds); *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993) (citing *United States v. McDowell*, 888 F.2d 285, 290 (3d Cir.1989)). Indeed, courts have the discretion to "use a degree of estimation" in

---

[11] The November 1, 2011, edition of the Sentencing Guidelines was used to compute Petitioner's sentence. (Sentencing Report at ¶ 105.)

determining unseized drug amounts involved in a drug conspiracy, given the inherently covert nature of such crimes. *Paulino*, 996 F.2d at 1545; *United States v. Ordaz*, 119 F. App'x 407, 412 (3d Cir. 2005) (non-precedential) (internal citations omitted). Moreover, the Third Circuit has previously acknowledged that appropriate methods of estimation include relying upon the testimony of co-defendants to establish the weight of drugs sold and other testimony regarding average amounts sold per day multiplied over a specific period of time. *Ordaz*, 119 F. App'x at 412 (citing *Gibbs*, 190 F.3d at 204).

At trial, the Government presented recordings of Petitioner selling a total of 140 grams of cocaine base in three different sales. (Gov. SM at 7 n. 3.) Petitioner admitted responsibility for each of these sales in voluntary stipulations. (Trial Day 4, 878:3-879:10.) Though Petitioner and his counsel denied all other alleged sales, co-conspirator Mr. Lowman testified that he bought between one and four ounces of crack cocaine from Petitioner per month throughout 2008 up until his arrest in September. (Trial Day 4 725:25-726:14; 733:9-18). Using this testimony, the Government estimated, for purposes of sentencing, that Petitioner had sold at least 196 grams in unrecorded sales throughout 2008, bringing his total sales up to 336 grams. (Gov. SM at 7 n. 3.) Thus, the Government argued for a sentencing guideline range of 280-840 grams of cocaine base, leading to a base level of Level 32.

Counsel for Petitioner adamantly argued against the Government's base level computation, asserting that the jury's refusal to hold Petitioner accountable for the sale of more than 280 grams of crack cocaine showed that they did not find witness Mr. Lowman credible, that the Government was trying for "a second bite of the apple," and that using a base offense level commensurate with the sale of over 280 grams of crack cocaine amounted to sentencing Petitioner for acquitted conduct. (Sentencing 3:14-7:10.) Finding trial counsel's argument

compelling, the Court used a base level derived from the sale of 196-280 grams of cocaine base, rather than the higher range for which the Government advocated. (Sentencing 7:11-20.)

This does not mean, however, that counsel would have been successful arguing for the even lower range of 28-112 grams resulting in a base level of Level 26. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Thomas v. Varner,* 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 688). Given the preponderance of the evidence standard applied at sentencing, and the stipulated sales amounting to 140 grams of cocaine base, counsel was aware that the Court only needed to find it more likely than not that Petitioner sold 46 more grams of cocaine base to justify the base level calculation used. Taking the totality of the evidence into account, Petitioner had one previous conviction for an assault that arose from his admitted previous crack dealing, (Sentencing Report 121-122; Gov. Sentencing Memo 5), the Government introduced evidence of eighty-nine calls between Petitioner and co-conspirator Mr. Lowman over the course of their conspiracy to distribute cocaine, for which the jury found Petitioner culpable, (Trial Day 6 1167:8-13), and the recorded sales heard at trial invite the inference that they were not the first dealings between Petitioner and his co-conspirator. (*See, e.g.,* Trial Day 3 659:9-660:6.) In view of this evidence, the Court found that the range of 196-280 grams of cocaine base an appropriate estimate upon which to calculate Petitioner's base offense level. Counsel's decision to move the Court to the 196-280 grams range was within his reasonable professional judgment, and therefore his discretion to dictate sound trial strategy. *See Strickland*, 466 U.S. at 690-91. Moreover, as previously addressed, it is not ineffective assistance of counsel for counsel to fail to make futile motions. Given the substantial evidence the Court

considered in favor of the 196-280 grams range, it was not unsound trial strategy to fail to
challenge this range.

Petitioner's second argument alleges ineffective assistance of counsel for failing to point
out the Court's inaccurate statement of the statutory minimum and maximum sentences
mandated for the offense committed. First, the Court did commit an error in describing the
statutory maximum and minimum. (Sentencing 92:15-93:10.) Petitioner himself pointed out this
discrepancy at trial:

> [THE DEFENDANT]: I'm – I'm just – I'm just, like – I'm trying to understand
> something. I thought 28 grams or more – I thought that – I didn't know that was life in
> prison. I never heard of that. I thought it was 280 grams, that the high end was life in
> prison. I only – I don't know if I've been misinformed. I'm just asking.
>
> [THE COURT]: Well, first of all, I'm not imposing a life sentence.
>
> [THE DEFENDANT]: No, I'm – I'm just – just asking what's in the guidelines. Because
> it said 28 grams or more is 5 to 40 years, and – and I'm still getting life –
>
> [THE COURT]: No, you're not getting life.
>
> [THE DEFENDANT]: No, not life. But my guidelines is still within life in prison, like –
>
> [THE COURT]: No, no, no. The only reference that I made to life in prison is that that's
> the statutory maximum. And I hope that you will live a lot longer than 235 months from –
> with credit for time served. That's not an issue.

(Sentencing 92:15-93:10.) Petitioner accurately stated that his statutory sentencing range
pursuant to 21 U.S.C.A. § 841(b)(1)(B) was five to forty years, rather than the statutory
minimum and maximum stated at sentencing of ten years and life, respectively, pursuant to 21
U.S.C. § 841(b)(1)(A). This misstatement arose from a sentencing report oversight that neglected
to take into account the jury's finding that Petitioner was responsible for conspiracy to sell over
28 grams of cocaine base, but not over 280 grams, for purposes of the statutory minimum and
maximum, but not for purposes of sentencing guideline computation. (Sentencing Report at 152.)

Regardless, this error was non-prejudicial, as it had no effect on the sentencing guidelines used to compute the actual sentence. The sentence imposed reflected a sentencing guideline predicated upon the sale of *under* 280 grams, and easily falls between the correct statutory minimum and maximum for the offense committed. Petitioner cannot satisfy the prejudice prong of *Strickland*. *See Irrizari v. United States*, 153 F. Supp. 2d 722, 731 (E.D. Pa. 2001) (finding that misstated statutory provision was non-prejudicial because it did not affect sentence imposed). Thus, Petitioner's allegations of ineffective assistance targeting sentencing are without merit.

I.   **Petitioner's claim that his counsel conceded to charges at trial without his consent is directly contradicted by the record; Count X is dismissed.**

Petitioner claims that his counsel made a "concession of guilt" regarding the aiding and abetting and distribution charges (Counts 45-50) without his consent. (Rep. at 15.) The record shows that Petitioner consented to and signed the stipulations as to the recorded drug transactions and the distance between Petitioner's residence and the school:

[MR. PINTO]: Your honor, my client, after everything was explained, has decided to sign the stipulation. He understands that the –

[GOVERNMENT]: That one, too?

MR. PINTO: -- that the chemist will not have to come because he agreed to that stipulation.

[THE COURT]: Is that correct, Mr. Brown?

[THE DEFENDANT]: Yes, that's correct.

[THE COURT]: And have you fully discussed the issues that you were concerned about with Mr. Pinto?

[THE DEFENDANT]: Yes.

[THE COURT]: And has he answered you to your satisfaction?

[THE DEFENDANT]: Yes.

[THE COURT]: Do you have any questions whatsoever remaining of me or Mr. Pinto or counsel for the Government?

[THE DEFENDANT]: No.

[THE COURT]: Are you signing that stipulation voluntarily and of your own free will?

[THE DEFENDANT]: I will – I will sign it voluntary [sic].

[THE COURT]: Are you doing so because you want to do it or because somebody made you do it?

[THE DEFENDANT]: Nobody made me do it.

[THE COURT]: All right.

[THE DEFENDANT]: Okay.

(Trial Day 4 878:3-879:10.) Given the record's blatant contradiction of Petitioner's claim, it is summarily dismissed.

## IV.   CONCLUSION

In conclusion, Petitioner fails to demonstrate that he received ineffective assistance from his counsel at trial or on appeal. Counsel's refusal to object to the admission of Mr. Lowman's testimony, his failure to object to the conspiracy count on the grounds suggested by Petitioner in his petition, his refusal to investigate and subpoena relevant cell phone documents, and the stance of counsel's objection to the Government's application of the sentencing guidelines all fall under the umbrella of sound trial strategy, as these decisions reflect the exercise of reasonable professional judgment on the part of Petitioner's trial counsel. Likewise, counsel's failure to challenge the Government's motion for complex case classification, his alleged failure to investigate and call witness Mr. Jones and co-defendant Mr. Fenwick to testify, and his error in acquiescing to the mistaken statutory minimum and maximum read during sentencing were non-prejudicial, as they do not undermine confidence in the trial's outcome; this Court would

31

have reached the same conclusions even in the absence of these possible errors. Petitioner's other arguments regarding both trial and appellate counsel are contradicted by facts established on the record or are otherwise without merit. Even construing the petition with the appropriate measure of tolerance and accepting Petitioner's allegations as true where they are not contravened by the record, Petitioner fails to adequately allege any instance of ineffective assistance of counsel upon which his motion may be granted. Therefore, Petitioner's motion for an evidentiary hearing is DENIED and his petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence is hereby DISMISSED. A certificate of appealability shall not issue.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. DARNELL JONES, II        J.